* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. At the time of the incident giving rise to this claim, defendant-employer was insured by Villanova Insurance Company. On or about November 1, 2002, Villanova Insurance Company was ordered into ancillary liquidation pursuant to an Order from the General Court of *Page 2 
Justice, Superior Court Division, Wake County. Thereafter, the North Carolina Insurance Guarantee Association assumed this claim pursuant to N.C. Gen. Stat. § 58-48-35.
2. All parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act on October 12, 2000, with defendant-employer employing the requisite number of employees to be bound under the provision said Act.
3. On October 12, 2000, plaintiff's compensation rate was $354.22.
4. At and subsequent to the hearing, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2);
 b. A Criminal History File, which was admitted into the record, and marked as Stipulated Exhibit (3), and;
 c. A Packet Containing A Social Security Administration Earnings Report and Employment Records, which was admitted into the record, and marked as Stipulated Exhibit (4).
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the Deputy Commissioner, plaintiff was forty-one (41) years of age, with his date of birth being January 11, 1965. Plaintiff is a high school graduate with an employment history which includes working in restaurants, as salesperson for Coca-Cola and as a truck driver/delivery person. *Page 3 
2. Plaintiff was operating a tractor-trailer leased by plaintiff from T.C.C. Leasing, Incorporated pursuant to a September 19, 2000 Lease Agreement to haul cargo for Cannon Express Corporation. On October 12, 2000, he was involved in a motor vehicle accident in Virginia while operating the leased tractor-trailer. Plaintiff asserts that this accident resulted in plaintiff sustaining a herniated disc with nerve root compression and other related injuries.
3. Defendants initially admitted compensability for this accident pursuant to an Industrial Commission Form 60 filed on March 7, 2002 and pursuant to the Pre-Trial Agreements entered into prior to the hearings before Deputy Commissioners Holmes and Gregory.
4. Plaintiff has prior history of back problems. On August 10, 1999, plaintiff sought medical treatment at the Durham Regional Hospital emergency room for injuries sustained during a slip and fall the previous day. Following an examination, plaintiff was diagnosed with as having post-concussion syndrome, cervical and lumbar strains, and right leg radicular pain. Plaintiff returned to Durham Regional Hospital on August 14, 1999, and was diagnosed as having right arm and leg pain with paresthesias.
5. On August 16, 1999, plaintiff completed a Patient History form for Dr. Bruce Kihlstrom in which he reported having sustained a concussion and experiencing neck, right shoulder, back and right leg pain. Dr. Kihlstrom opined that plaintiff had a lumbar strain, but was unable to explain plaintiff's sensory abnormalities. Plaintiff later began a course of physical therapy, a part of which included his completion of a Minnesota Multiphasic Personality Inventory-2 (MMPI-2) on November 12, 1999. The MMPI-2 reported that plaintiff expressed vague somatic complaints, and noted that he was self-centered, dissatisfied, demanding of attention, complaining, generally negative and pessimistic. The report also reflected that *Page 4 
plaintiff was highly skilled at frustrating and sabotaging the help of others and would often shop for physicians. It was recommended that plaintiff's history and background be reviewed to determine whether a medical or neuropsychological evaluation was warranted.
6. Following the motor vehicle accident which is the subject of this claim, plaintiff sought treatment from Physician's Assistant David Lewis of South Granville Primary Care on October 13, 2000. Plaintiff denied having sustained prior any prior back injures in his subjective history given to PA Lewis. Plaintiff continued to seek care at Granville Primary Care and was restricted from driving a truck as of October 18, 2000. Plaintiff returned to South Granville Primary Care on October 23, 2000, and reported radiating symptoms in his right lower extremity, and was medically excused from work until an MRI could be obtained. An MRI was performed on November 17, 2000. Dr. Mahan reviewed the MRI which indicated a moderate herniated disc with nerve root compression, then referred plaintiff for additional treatment with Dr. Robert Price. Dr. Mahan continued plaintiff's work restrictions that included no pushing, pulling, or lifting.
7. Dr. Price first examined plaintiff on November 27, 2000, at which time plaintiff reported a history of good health until October 12, 2000 and again reported having experienced no prior back injuries. Following an examination, Dr. Price medically excused plaintiff from work until December 6, 2000. Plaintiff's out of work status was later extended to December 28, 2000.
8. From October 20, 2000 to December 21, 2000, plaintiff worked at Williams and Bed Rock Trucking Company. During this period, plaintiff did not inform defendants or his physicians that he was working. Defendants discovered this information prior to the July 2004 *Page 5 
hearing and, at that time, plaintiff admitted earnings from Williams and Bed Rock Trucking Company of $3,536.10.
9. On December 21, 2000, Dr. Price performed a right L5-S1 hemi-laminectomy and diskectomy. On January 12, 2001, plaintiff informed Dr. Price that he was experiencing ongoing pain that had worsened when he coughed or sneezed while recuperating from his surgery. Dr. Price then medically excused plaintiff from work and recommended a second MRI. The MRI revealed a recurrent disc herniation at the L5-S1 level. Dr. Price recommended a second surgery based on these results. Dr. Price has testified that plaintiff's cough or sneeze occurred at a time when he was more susceptible to a recurrent disc herniation.
10. On March 15, 2001, plaintiff underwent a right L5-S1 hemilaminectomy surgical procedure to repair his recurrent herniation. On April 6, 2001, plaintiff reported that he was experiencing little back pain. Dr. Price testified that plaintiff also reported having fallen several times. Plaintiff reported ongoing pain to Dr. Price, who ordered another MRI. The results of the MRI led Dr. Price to opine that plaintiff showed no need for a third surgical intervention. On June 15, 2001, plaintiff reported being nearly pain free to Dr. Price.
11. Dr. Price released plaintiff to normal duty and assigned a fifteen percent (15%) permanent partial disability rating related to his two surgeries, which pursuant the Commission's Ratings Guide, equaled a total of twenty-seven and one-half percent (27.5%).
12. On July 30, 2001, plaintiff was hired to work for Dodson Brothers Exterminating Co., Inc. Contrary to plaintiff's testimony that he formed Crabtree Transportation in 2000, plaintiff's job application with Dodson Brothers indicates that he operated Crabtree Transportation from September 19, 1993 until June 1, 2001. Plaintiff did not disclose his employment with Dodson Brothers to defendants, who learned of it from Social Security *Page 6 
Administration earnings records. Plaintiff earned $602.26 during his employment with Dodson Brothers. Plaintiff also completed and signed a medical questionnaire while applying for work with Dodson Brothers. In the questionnaire, plaintiff denied receiving treatment for numerous conditions including any serious back injury or back weakness. Plaintiff denied having any surgeries, having ever been hospitalized, having x-rays, or having any lost time from work in the previous two years due to a medical condition. Plaintiff also denied having undergone any treatment from a physician for any symptoms in the past five years.
13. On August 30, 2001, Mr. Dean Perry, manager of Dodson Brothers, completed a termination report for plaintiff. The report indicates that plaintiff was terminated for having fifteen consecutive days of unreported absences. The report indicates that plaintiff last worked on August 9, 2001 and that plaintiff telephoned Dodson Brothers on August 10, 2001 and reported having fallen the previous day at his ex-wife's house, injuring his back.
14. Prior to his termination from Dodson Brothers, on August 16, 2001, plaintiff again returned to Dr. Price and reported recurrent numbness and tingling in his right leg and that his numbness had caused him to fall. Dr. Price opined that plaintiff's fall precipitated his onset of symptoms, but expressed doubt regarding plaintiff's claim that numbness caused him to fall. Dr. Price testified that based on his experience as a neurosurgeon, he could think of no physiological explanation for the symptoms plaintiff reported. At the August 16, 2001 examination, plaintiff did not inform Dr. Price of the August 9, 2001 fall he reported to Dodson Brothers. Plaintiff also did not report this to defendants, or any subsequent medical care provider. Moreover, plaintiff's reports of persistent symptoms were inconsistent with his Dodson Brothers medical questionnaire. Dr. Price referred plaintiff for another MRI, which was *Page 7 
interpreted as revealing no surgical lesion. Dr. Price indicated that plaintiff was not a candidate for lumbar fusion.
15. Plaintiff returned to Dr. Price on October 9, 2001, at which time Dr. Price again informed plaintiff that he was not a surgical candidate.
16. On October 5, 2001, plaintiff again returned to South Granville Primary Care and reported experiencing back pain. Medical records reflect that plaintiff complained of anxiety related to his purported inability to work.
17. In December 2001 and January 2002, defendants placed plaintiff under surveillance. The surveillance showed that plaintiff was working for Direct Express Courier Service at that time.
18. On February 7, 2002, plaintiff underwent an evaluation by Dr. Craig Derian, and reported numbness and pain in his back and right lower extremity. Dr. Derian noted that plaintiff also reported being out of work. Dr. Derian opined that plaintiff would likely not improve absent a surgical fusion.
19. During the period of May 11, 2001 to February 21, 2002, plaintiff was employed by American Expediting, Tom's Foods, and Direct Express without interruption, earning $12,220.76. Despite working continuously during this period, plaintiff repeatedly informed medical providers that he was experiencing anxiety because he was unable to work.
20. In March 2002, defendants confronted plaintiff with evidence of his work at Direct Express. When confronted, plaintiff admitted he had been working for Direct Express, but did not disclose working for American Expediting or Tom's Foods until 2004, when defendants confronted him with that information.
21. On March 7, 2002, was examined by Dr. William Lestini for an independent medical evaluation. Dr. Lestini opined that plaintiff was a possible candidate for lumbar fusion surgery.
22. On March 21, 2002, plaintiff returned an Industrial Commission Form 90 in *Page 8 
which he was supposed to report all wages earned since his October 12, 2000 injury. Plaintiff admitted earnings of $6,400.55 from his employment with Direct Express during the periods of August to December 2001 and from January to February 2002.
23. On October 29, 2002, plaintiff underwent a discogram ordered by Dr. Lestini, the results of which reproduced plaintiff's symptoms at L5-S1. Dr. Lestini noted this was due to a central disc herniation.
24. Plaintiff underwent a lumbar fusion at L5-S1 on December 16, 2002. Following surgery, plaintiff continued to complain of right lower extremity pain. Dr. Lestini released plaintiff to light duty on March 13, 2003.
25. Social Security Administration earnings records reflect that in 2002 and 2003, plaintiff earned $2,166.91 while working for Papa John's Pizza. Plaintiff also earned $131.88 while working for Maola in 2002.
26. Plaintiff provided verified discovery responses to defendants on March 17, 2003 which indicated that plaintiff did not start Crabtree Transportation until 2000, and tax documents were provided as support for his statements about earnings in 1999 and 2000.
27. On April 1, 2003, plaintiff was examined for left knee pain by Dr. Michael Fajgenbaum, an orthopaedic surgeon. Plaintiff reported injuring his left knee after falling due to lower extremity numbness and weakness in his right leg. Plaintiff also reported having been out of work since October 2000, a report not supported by the credible evidence of record. An MRI of plaintiff's left knee revealed a degenerative process that may have worsened from the reported fall. For his left knee condition, Dr. Fajgenbaum advised plaintiff to avoid squatting, kneeling, crouching, and climbing.
28. On June 3, 2003, plaintiff completed another Form 90 for the period of March 21, 2002 to the date of the Form. For this period, plaintiff reported earning $1,480.00. Plaintiff later amended his response and reported no earnings, attributing his prior response to income from an escrow account that pre-dated his injury. *Page 9 
29. On June 30, 2003, plaintiff entered into an agreement with Franklin Baking Company, LLC to distribute products in Raleigh. Plaintiff's contract with Franklin Baking ended by mutual agreement on January 9, 2004. During his relationship with Franklin Baking, plaintiff earned $11,052.32.
30 On July 9, 2003, plaintiff reported to the emergency department of Maria Parham Hospital. Plaintiff indicated that on July 8, 2003, the lift gate of a truck gave way causing him to fall and strike his right knee on a bumper and injure his right thumb and hand. Plaintiff did not disclose this injury or treatment to defendants, but later asserted the injury was the result of a compensable condition.
31. On July 10, 2003, plaintiff went to Raleigh Community Hospital and reported having fallen on concrete just prior to arriving, injuring his right knee and hand. Plaintiff stated that he fell due to a problem with his left knee and identified the NCIGA as the carrier to be billed. Plaintiff did not disclose the incident he reported the day prior at Maria Parham Hospital.
32. On July 23, 2003, plaintiff attended a hearing before Deputy Commissioner Holmes. During the hearing, plaintiff testified that he injured his right knee and hand because his left knee locked up. Plaintiff also testified that the only employer for whom he had returned to work was Direct Express and that he had not returned to work since his surgery by Dr. Lestini in December 2002. *Page 10 
33. Defendant NCIGA initiated vocational rehabilitation for plaintiff and contends that he was not cooperative with their efforts. On December 18, 2003, a Form 24 application was disapproved based upon the evidence being insufficient to prove that plaintiff had refused suitable work. At that time, the Commission directed plaintiff to comply with vocational rehabilitation.
34. During the time defendants were providing vocational rehabilitation, plaintiff was working for Smith Exterminating and receiving total disability benefits. Plaintiff did not disclose his earnings to defendants.
35. On January 23, 2004, plaintiff completed a Form 90 for the period of June 3, 2003 to January 23, 2004. Plaintiff reported earning $2,600.00 from CDS Inc., d/b/a/ Orkin Pest Control.
36. On February 5, 2004, the Industrial Commission approved defendants' second Form 24 Application. The basis for this decision included that plaintiff had failed to comply with vocational rehabilitation as ordered. Plaintiff's ongoing temporary total disability benefits were terminated as of January 9, 2004, the date the Form 24 was filed.
37. From October 12, 2000 to January 9, 2004, defendants paid plaintiff $57,120.83 in indemnity compensation. This includes a period of underpayment, a lump sum correction, and a period of payment at plaintiff's stipulated average weekly wage of $354.22.
38. According to Form 90s completed by plaintiff from October 12, 2000 to January 23, 2004, he earned $9,000.55. Plaintiff later admitted to his earnings at Williams, Bedrock Trucking, American Expediting, Tom's Foods, Smith Exterminating, Franklin Baking, Maola, Personnel Outsource, Papa John's Pizza, and Dodson Brothers Pest Control. Plaintiff's Social Security Administration earnings report shows that plaintiff earned significantly more *Page 11 
than he eventually reported, a total of $33,766.24 during this period. Plaintiff underreported his earnings by approximately $24,000.00.
39. On June 29, 2005, plaintiff applied for a position with Puryear Transport, Inc. Plaintiff provided numerous records to Puryear, including a 2004 Form 1099 from Crabtree Transportation LLC to plaintiff which showed that plaintiff had earned $52,378.79 in 2004. Plaintiff further indicated in his application that he was employed by Crabtree Transportation from June 1992 to June 2005. As for his medical history, plaintiff indicated that he had no significant injury or surgery during the past five years. 40. Dr. Price was unable to causally relate plaintiff's October 12, 2000 compensable injury to his reported fall in June of 2001. Dr. Price further testified that plaintiff demonstrated symptom magnification.
41. Dr. Fajgenbaum testified that his initial relation of plaintiff's left knee injury to his October 12, 2000 injury by accident was based entirely on plaintiff's subjective history. Dr. Fajgenbaum further testified that he would not be surprised if the Commission found plaintiff was not credible. Without evidence that plaintiff suffered neurological deficits and weakness in his leg after his second back surgery, plaintiff's left knee condition was not related to the surgery or initial injury.
42. During his August 2006 deposition, Dr. Lestini opined that the injuries for which he treated plaintiff were related to the October 12, 2000 injury, based on the assumption that plaintiff told the truth about the history of his physical condition.
43. Plaintiff's former wife, Ms. Carolyn Crabtree, testified at the July 2004 hearing. Ms. Crabtree was married to plaintiff in 1998 and separated from him around Thanksgiving in 2001. Ms. Crabtree testified that after plaintiff formed Crabtree Transportation, he was *Page 12 
dissatisfied with his trucking arrangement because he was not being compensated correctly for his mileage. Ms. Crabtree further testified that plaintiff was fully aware of his back problems and that he planned to falsify a work-related injury to receive medical care and other benefits.
44. The Full Commission finds that plaintiff deliberately misrepresented the nature of his injury to medical professionals at Raleigh Community Hospital on July 10, 2003 in order to obtain treatment for an unrelated knee injury. Additionally, based upon the credible evidence of record, the Full Commission finds that plaintiff's sworn testimony in the hearing before Deputy Commissioner Holmes was demonstrably false and willfully made with the purpose of prolonging plaintiff's receipt of disability compensation.
45. On October 4, 2005, plaintiff plead guilty to criminal charges of obtaining property by false pretense. As part of his plea agreement, plaintiff was ordered to pay restitution to NCIGA in the amount of $5,734.37. Plaintiff was indicted for insurance fraud for falsely reporting his wages on an Industrial Commission Form 90. Defendants are not seeking restitution for the amounts plaintiff is directed to pay under his criminal conviction. However, since that conviction, defendants have discovered additional evidence that plaintiff was concealing his income while receiving ongoing total disability compensation for which NCIGA is seeking restitution.
46. The Full Commission finds that the medical testimony in this matter fails to establish a causal connection between plaintiff's October 12, 2000 injury and any conditions herein for which he sought treatment subsequent to June 15, 2001 when Dr. Price noted that plaintiff was essentially pain free and released him to normal duty. The causation opinions formed by the physicians were based upon plaintiff's subjective history which the Full Commission finds as not credible. Taking into *Page 13 
consideration plaintiff's deception in this matter together with the evidence of record, there is insufficient evidence to establish that plaintiff's treatment after June 15, 2001 was related to his original injury.
47. Defendants accepted the compensability of plaintiff's claim via a Form 60 on March 7, 2002. Defendants now contend that this admission should be set aside due to plaintiff's repeated misrepresentations and his felony conviction for fraud. However, there is insufficient evidence upon which to overturn the parties' Stipulation and the prior Opinion and Award by Deputy Commissioner Holmes.
48. Based upon the overwhelming credible evidence of record, defendants have proven that any conditions herein for which plaintiff sought treatment subsequent to June 15, 2001 were not causally related to plaintiff's October 12, 2000 injury by accident, nor were they the direct and natural result of said accident.
49. Based on the totality of the evidence, the Full Commission finds that plaintiff had the ability to earn, and in fact did earn wages for the period of June 16, 2001 through the present.
50. Based upon plaintiff's repeated misrepresentations and fraudulent behavior, defendants are entitled to have plaintiff reimburse them for payments of ongoing total disability compensation made subsequent to June 15, 2001.
51. As the result of his October 12, 2000 injury by accident, plaintiff sustained a twenty-seven and one-half percent (27.5%) permanent partial disability rating to his back. This compensation amounts to $29.223.15 and shall be offset against the reimbursement amount plaintiff owes to defendants.
52. There is insufficient evidence that plaintiff pursued this hearing based upon stubborn, unfounded litigiousness. *Page 14 
53. In the discretion of the Full Commission, defendants late filing of their Form 60 will not subject them to sanctions.
54. This matter is being referred to the Industrial Commission's Fraud Section for further investigation.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On October 12, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Regarding the payment of medical expenses, the Parsons presumption applies given defendants' filing of an Industrial Commission Form 60.Perez v. American Airlines, ___ N.C.App. ___, 620 S.E.2d 288 (2005). Based upon the evidence of record, defendants' have met their burden that any conditions herein for which plaintiff sought treatment subsequent to June 15, 2001 were not the direct and natural result of or causally related to his October 12, 2000 injury by accident. Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
3. Any disability plaintiff may have had subsequent to June 15, 2001 is not the result of his October 12, 2000 injury by accident. N.C. Gen. Stat. §§ 97-2(9); 97-29.
4. Defendants are entitled to be reimbursed by plaintiff for the amount of total disability compensation paid to him for the period of June 16, 2001 forward. N.C. Gen. Stat. § 97-42.
5. As the result of his October 12, 2000 injury by accident, plaintiff has sustained a twenty-seven and one-half percent (27.5%) permanent partial disability rating to his back which *Page 15 
has a monetary value of $29.223.15. N.C. Gen. Stat. § 97-31. This amount shall be offset against the reimbursement amount plaintiff owes to defendants.
6. As the result of his October 12, 2000 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred through June 15, 2001, but not thereafter. The related expenses include costs associated with plaintiff's first and second back surgeries. N.C. Gen. Stat. § 97-25.
7. Due to there being insufficient evidence that plaintiff pursued this hearing based upon stubborn, unfounded litigiousness, defendants are not entitled to attorney's fees pursuant to N.C. Gen. Stat. §97-88.1.
8. Pursuant to N.C. Gen. Stat. § 97-88.2, this matter is being referred to the Industrial Commission's Fraud Section.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 A W A R D
1. Subject to an offset in the amount of $29.223.15 for his rating, plaintiff shall reimburse defendants the amount of total disability compensation paid to him subsequent to June 16, 2001.
2. Defendants pay for all related medical expenses incurred by plaintiff as the result of his October 12, 2000 injury by accident through June 15, 2001, but not thereafter. The related expenses include costs associated with plaintiff's first and second back surgeries.
3. Each side shall pay its own costs.
 This the 29th day of August, 2007. *Page 16 
S/______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ PAMELA T. YOUNG COMMISSIONER *Page 1